**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AVANGARD FINANCIAL GROUP, INC.,**<br>**Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **RAICH ENDE MALTER & CO, LLP,**<br>**Defendant.** | **NO.  12-6497** |

DuBois, J.                                                                                      April 17, 2015

**M E M O R A N D U M**

## I.    INTRODUCTION

This action arises out of the failure of defendant Raich Ende Malter & Co., LLP, ("REM or "defendant") to complete an audit of plaintiff Avangard Financial Group, Inc.'s ("Avangard or "plaintiff") balance sheets and related financial statements. Plaintiff asserts claims of professional negligence, breach of contract, unjust enrichment, negligence, and fraud. Defendant filed a counterclaim seeking to recover the unpaid balance on the audit contract of $149,000.00.

Presently before the Court are: (1) Plaintiff's Motion for Partial Summary Judgment; (2) Defendant's Motion for Summary Judgment on Plaintiff's Claims; and (3) Defendant's Motion to Preclude the Report and Expert Testimony of Thomas P. Kirwin. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is denied, Defendant's Motion for Summary Judgment on Plaintiff's Claims is granted in part and denied in part, and Defendant's Motion to Preclude the Report and Expert Testimony of Thomas P. Kirwin is granted in part and denied in part.

## II.    BACKGROUND[1]

Beginning in 2008, plaintiff and defendant entered into a series of agreements in which defendant agreed to conduct an audit of plaintiff's balance sheets and related financial statements. (Pl.'s Mot. Partial Summ. J. 1; Def.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J. 1.) The purpose of the audit was to determine whether defendant could render an independent opinion that plaintiff's financial statements were fairly presented so plaintiff could use that opinion in connection with the filing of an S-1 Registration Statement with the United States Securities and Exchange Commission ("SEC"). (Pl.'s Mot. Partial Summ. J. 1; Def.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J. 1.)

On November 6, 2009, Daniel Harvey, the field manager of defendant's engagement team, sent an internal email to other members of the team in which he raised numerous concerns relating to perceived deficiencies in plaintiff's internal controls, which, according to Harvey, illustrated the team's "inability to perform as auditors on this job." (Pl.'s Mot. Partial Summ. J. 2; Id., Ex. G.) Plaintiff asserts that defendant never sent this email to plaintiff and, even though it did not believe it would be able to complete the audit, continued to bill plaintiff for services for at least the next two years. (Id.)

Defendant contends that it informed plaintiff of its concerns and continued working diligently towards completing the audit until about January 2012. (Pl.'s Mot. Partial Summ. J. 3; Def.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J. 2.) According to defendant, it was forced to stop working on the audit at that time because plaintiff threatened to sue defendant and the "threat of suit destroyed [defendant's] independence" as an auditor. (Def.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J. 2.) Defendant also contends that it could not complete the audit because, despite its

---

[1]    The Court refers to the parties' statements of material facts where those facts are not controverted. Where they are controverted, the factual disputes are noted.

requests, plaintiff failed to provide it with necessary documents and data. (Id. 1–2.) Defendant admits that it did not complete the audit or issue an opinion. (Pl.'s Mot. Partial Summ. J. 3; Def.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J. 2.) Plaintiff claims that defendant intentionally failed to complete the audit even though it had sufficient information. (Pl.'s Mot. Partial Summ. J. 3.)

On November 19, 2012, plaintiff filed suit against defendant in this Court. Plaintiff asserts five claims in the Complaint: (1) professional negligence; (2) breach of contract; (3) unjust enrichment; (4) negligence; and (5) fraud. Defendant filed a counterclaim seeking to recover $149,000.00, the unpaid balance on the audit contract.

## III.    MOTIONS FOR SUMMARY JUDGMENT

The Court first considers Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment on Plaintiff's Claims. For the reasons that follow, plaintiff's Motion is denied, and defendant's Motion is granted in part and denied in part.

### A.  Legal Standard

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law" and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

### B. Plaintiff's Motion for Partial Summary Judgment

#### 1) Request for Judicial Notice

At the outset of its Motion for Partial Summary Judgment, plaintiff requests that the Court take judicial notice of eleven Public Company Accounting Oversight Board ("PCAOB") auditing standards. (Pl.'s Mot. Partial Summ. J. 6.) The Court will consider all relevant standards in addressing the issues raised in plaintiff's Motion. The Court thus finds it unnecessary to separately take judicial notice of those standards, and denies that part of plaintiff's Motion for Partial Summary Judgment which asks the Court to do so.

#### 2) Requested Partial Summary Judgment Rulings

Next, plaintiff asks the Court to issue nine separate "partial summary judgment rulings." (Id. 7–26.) The requested rulings relate to plaintiff's allegation that defendant was negligent in conducting the audit because it failed to comply with, inter alia, various professional accounting standards. (Id. 6.) Because some of the requests are related, the Court considers them together where appropriate. For the reasons that follow, all of plaintiff's requests are denied.

### a) Request Nos. 1 & 3: Defendant Terminated its First Engagement on July 12, 2011, and Began a New Engagement on October 25, 2011

In its first and third requests, plaintiff asks the Court to rule that defendant terminated the first engagement between the parties on July 12, 2011, and that the parties entered into a separate engagement on October 25, 2011.

Although there is evidence to support plaintiff's position, (see id., July 12, 2011 Resignation Letter from Gregory J. Lavin to Avangard Board of Directors, Ex. C), there is contrary evidence in the record supporting defendant's contention that the July 12, 2011 resignation letter was "recanted" such that there was one continuing engagement between the parties, rather than two separate ones. (See Def.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J., Deposition of Gregory Lavin, Ex. A, at 57–58.) The Court will not "weigh the evidence or make credibility determinations" to resolve this question at the summary judgment stage. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). Accordingly, plaintiff's first and third requests are denied.

### b) Request Nos. 2 & 4: Defendant was Required to Comply with PCAOB Auditing Standard No. 3 and Complete its Audit Documentation

In its second and fourth requests, plaintiff asks the Court to rule that defendant failed to comply with PCAOB Auditing Standard No. 3,[2] which requires, inter alia, an auditor to fully document the work performed during its audit. In reviewing the record, the Court concludes that there is a genuine dispute of material fact as to whether defendant's alleged inability to comply with this Standard was caused by plaintiff's own actions in failing to provide defendant with

---

[2]      "In 2002 . . . Congress enacted the Sarbanes–Oxley Act . . . , which established the Public Company Accounting Oversight Board . . . and charged that entity with making 'auditing and ethics standards' that govern the conduct of accounting firms conducting audits of public companies." In re Lehman Bros. Sec. & Erisa Litig., No. 09-2017, 2012 WL 983561, at *5 (S.D.N.Y. Mar. 22, 2012).

necessary documents and data, and later, threatening litigation. (See Def.'s Res. Opp'n Pl.'s Mot. Partial Summ. J. 7.) Thus, plaintiff's second and fourth requests are denied.

### c) Request No. 5: No Work Other than as Reflected in the Work Papers Produced by Defendant was Actually Performed

In plaintiff's fifth request, it asks the Court to rule that defendant did not perform any work in connection with the audit other than the work that was documented. Plaintiff relies on PCAOB Standard No. 3, which according to plaintiff, provides that only work that is properly documented is deemed to have been actually performed. The Court rejects this argument.

Although PCAOB Standard No. 3 requires work to be documented, nothing in that Standard clearly sets forth the position that only that work which is documented is deemed to have actually been performed. In fact, a PCAOB Release discussing Standard No. 3 contradicts plaintiff's position. In discussing the requirement that auditors document their work, the Release states that "[f]ailure to provide adequate documentation could limit an auditor's ability to demonstrate that the work was actually performed," not that the failure to do so absolutely forecloses an auditor from arguing that undocumented work was actually performed in connection with an audit. PCAOB Release No. 2004-006 (June 9, 2004), at 4, available at http://pcaobus.org/Rules/Rulemaking/Docket012/2004-06-09_Release_2004-006.pdf (emphasis added). The Release goes on to state that "[t]he Board emphasizes that, in the event of a deficiency in documentation, the auditor must be prepared to present persuasive other evidence that the procedures were performed, evidence was obtained, and appropriate conclusions were reached." Id.  Moreover, defendant has presented testimony from Gregory Lavin — the audit engagement partner — in which he explained that "there were documents, such as e-mail communications, that were missing from the work papers because once [REM] was threatened

with a lawsuit, he stopped putting anything into the work papers." (Def.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J. 10.)

Thus, as there is a genuine dispute of material fact as to what work defendant actually performed, plaintiff's fifth request is denied.

### d) Request No. 6: Defendant Failed to Communicate Daniel Harvey's November 6, 2009 Email to Plaintiff

In its sixth request, plaintiff asks the Court to rule that defendant never informed it of the November 6, 2009 email in which Daniel Harvey outlined numerous problems with plaintiff's auditability. In reviewing the record, the Court concludes that there is contradictory evidence precluding the granting of plaintiff's Motion as to this issue. For instance, there is deposition testimony from Gregory Lavin in which he stated that, although he did not believe that he provided Harvey's actual email to plaintiff's Board of Directors, "[w]e discussed it with them." (Pl.'s Mot. Partial Summ. J., Deposition of Gregory Lavin, Ex. J, at 129.) Because there is a genuine dispute of material fact as to whether defendant communicated the contents of the November 6, 2009 email to plaintiff, the Court denies plaintiff's sixth request.

### e) Request Nos. 7 & 8: Defendant Failed to Adequately Supervise the Audit and Obtain a Sufficient Understanding of Plaintiff's Internal Controls as Required by PCAOB Standards

In plaintiff's seventh and eighth requests, it asks the Court to rule that defendant failed to adequately supervise the audit and obtain a sufficient understanding of plaintiff's internal controls as required by PCAOB standards. Contrary to plaintiff's argument, there is sufficient evidence in the record to support defendant's version of the facts, which is that the audit was performed diligently but could not be completed due to plaintiff's failure to provide defendant with necessary documents and data, and later, threatening litigation. (See Def.'s Resp. Opp'n

Pl.'s Mot. Partial Summ. J. 11–12.) Accordingly, plaintiff's seventh and eighth requests are denied.

### f) Request No. 9: Defendant Failed to Obtain a Temporary License to Practice in Pennsylvania

In plaintiff's ninth request, it asks the Court to rule that defendant violated 49 Pa. Code § 11.5[3] by failing to obtain a temporary license to practice public accounting in Pennsylvania. Defendant has not presented any evidence that it did obtain such a license, but argues that the statute is inapplicable because defendant did not issue an audit report in this case. See 49 Pa. Code § 11.1 (defining "attest activity" as "[t]he provision of . . . financial statement services[, such as an] engagement performed in accordance with attestation standards established by an organization granted authority by statute or regulation to establish attestation standards, such as the [American Institute of CPAs ("AICPA")] or the PCAOB[,] . . . together with the issuance of a report expressing or disclaiming an opinion or other assurance on the information . . . .").

On the present state of the record, the parties have not provided the Court with sufficient information to enable it to determine whether Section 11.5 applies to this case. Accordingly, while the Court will accept as undisputed that defendant did not obtain a temporary license to practice public accounting in Pennsylvania, the Court declines to rule that defendant thereby violated 49 Pa. Code § 11.5. Plaintiff's ninth request is therefore denied.

---

[3]       Section 11.5 provides that "[a] CPA, or qualified association composed of CPAs, of another state may temporarily practice public accounting in this Commonwealth, if the CPA or qualified association: (1) Holds a current license or registration to practice public accounting in the other state. (2) Concurrently practices public accounting in the other state. (3) Obtains from the Board a temporary practice permit prior to performing the temporary work." 49 Pa. Code § 11.5. The phrase "public accounting" is defined as: "(i) Attest activity. (ii) Other professional services involving the use of accounting skills, including, but not limited to, management advisory or consulting services, business valuations, financial planning, preparation of tax returns or furnishing of advice on tax matters by a person holding out as a CPA, public accountant or firm." 49 Pa. Code § 11.1.

In sum, plaintiff's Motion for Partial Summary Judgment is denied in its entirety.

### C.  Defendant's Motion for Summary Judgment on Plaintiff's Claims

Defendant argues that its Motion for Summary Judgment should be granted as to all five of plaintiff's claims, thus leaving only defendant's counterclaim for trial. For the reasons that follow, the Court grants defendant's Motion for Summary Judgment as to plaintiff's claims of unjust enrichment and negligence, but denies the Motion as to plaintiff's claims of professional negligence, breach of contract, and fraud.

### 1)  Plaintiff's Claim of Professional Negligence – Count I of the Complaint

Defendant argues that plaintiff's claim of professional negligence fails because plaintiff has failed to present any evidence of a breach in the standard of care by defendant or that any alleged breach caused any harm to plaintiff. The Court disagrees.

In order to succeed on a claim of professional negligence under Pennsylvania law, a "plaintiff must establish that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was actually harmed; and (4) the defendant's breach caused that harm." Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd., No. 10-704, 2012 WL 2150744, at *5 (W.D. Pa. June 12, 2012) (citations omitted).  A professional who performs accounting services "is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement (Second) of Torts § 299A (1965); see Robert Wooler Co. v. Fid. Bank, 479 A.2d 1027, 1031–32 (Pa. Super. Ct. 1984) (applying Restatement (Second) of Torts § 299A in context of accounting malpractice action). "The specific scope of an accountant's duty to a client is determined primarily by the terms and conditions of the contract of employment." Bancroft Life, 2012 WL 2150744, at *5.

The Court concludes that plaintiff has presented sufficient evidence from which a reasonable factfinder could conclude that defendant breached the applicable standard of care and that plaintiff was thereby harmed. For instance, plaintiff points to evidence that defendant believed there were serious deficiencies relating to plaintiff's internal controls as early as November 6, 2009, but failed to adequately communicate those concerns to plaintiff even though it continued to bill and collect payments from plaintiff over at least the next two years. (See Pl.'s Mot. Partial Summ. J., Internal REM Email from Daniel Harvey dated November 6, 2009, Ex. G.) Plaintiff has also presented evidence of alleged lapses in defendant's documentation of the work it says it performed during the audit, such as numerous blank or missing auditing forms and checklists. (See id., Exs. H-1–H-4, I-1–I-4.) Plaintiff has also presented evidence of damages which are causally connected to the alleged breach, such as fees paid to defendant for work that was either negligently or never performed. (See Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 21.) In short, taking all of the evidence in a light most favorable to plaintiff, the Court concludes that a reasonable factfinder could conclude that plaintiff was harmed by defendant's breach of the applicable standard of care.

Accordingly, defendant's Motion for Summary Judgment is denied with respect to plaintiff's claim of professional negligence.

### 2)      Plaintiff's Claim of Breach of Contract – Count II of the Complaint

Defendant argues that plaintiff's claim of breach of contract fails because it is redundant of plaintiff's claim of professional negligence, or, in the alternative, because plaintiff has not presented any evidence that defendant breached the terms of the agreement. The Court rejects these arguments.

First, although the basis for plaintiff's claim of breach of contract is similar to its claim of professional negligence, "[u]nder settled Pennsylvania case law, a client may bring both a contract action and a tort action against a professional based on allegations that he or she failed to provide the client with professional services consistent with those expected of the profession . . . ." Ins. Co. of Greater New York v. Fire Fighter Sales & Serv. Co., No. 11-1078, 2015 WL 737576, at *11 (W.D. Pa. Feb. 20, 2015) (citing Rapidigm v. ATM Mgmt. Serv. LLC, 63 Pa. D & C. 4th 234 (Pa. Ct. Com. Pl. 2003)). Thus, plaintiff's breach of contract claim is not redundant of its claim of professional negligence.

Second, contrary to defendant's argument, there is a genuine dispute of material fact as to whether defendant breached the terms of its agreement with plaintiff. For instance, although the contract required defendant to "communicate in writing to the board, audit committee and management any significant deficiencies and material weaknesses relating to internal control over financial reporting identified while performing our audits," plaintiff has presented evidence that defendant failed to do so. (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., August 28, 2009 Engagement Letter, Ex. E, at 2; Pl.'s Mot. Partial Summ. J., Internal REM Email from Daniel Harvey dated November 6, 2009, Ex. G.) In light of the conflicting evidence in the record, whether plaintiff has proved its claim of breach of contract is a question best left for the jury to decide.

Thus, the Court denies defendant's Motion for Summary Judgment as to plaintiff's claim of breach of contract.

### 3) Plaintiff's Claim of Unjust Enrichment – Count III of the Complaint

Defendant argues that plaintiff's claim of unjust enrichment fails because it is redundant of plaintiff's claim of professional negligence, or, in the alternative, because it fails on the merits. For the reasons that follow, the Court grants defendant's Motion for Summary Judgment as to this claim.

Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (alteration in original). In this case, it is clear that the professional relationship between plaintiff and defendant was founded upon a series of express contracts, the validity of which neither party disputes. (See, e.g., Compl., Count III, ¶ 33) ("Defendant has received the benefit of payment in full from [p]laintiff but has not performed all of its obligations under the contract . . . .") (emphasis added). Under such circumstances, plaintiff may not maintain separate causes of action for breach of contract and unjust enrichment. See von Rosing v. SAP AG, No. 13-6022, 2014 WL 1053603, at *3 (E.D. Pa. Mar. 18, 2014); SDC Info. Servs., Inc. v. Intelligroup, Inc., No. 11-05874, 2012 WL 2119156, at *2 (D.N.J. June 11, 2012).

Accordingly, the Court grants defendant's Motion for Summary Judgment as to plaintiff's claim of unjust enrichment.

### 4) Plaintiff's Claim of Negligence – Count IV of the Complaint

Defendant argues that plaintiff's claim of negligence fails because it is redundant of plaintiff's claim of professional negligence. The Court agrees.

Both of these claims arise out of the same course of conduct, both claims are based on the alleged negligence of defendant, and the standard of care applicable to defendant is identical

under both claims. See, e.g., Devitt v. Marriott Hotel Mgmt. Co. Virgin Islands, Inc., No. 2013-

33, 2014 WL 184625, at *4 (D.V.I. Jan. 16, 2014) (dismissing premises liability claim as

duplicative of negligence claim where the acts alleged, the alleged harm, and the elements

required to succeed on both claims were identical); Restatement (Second) of Torts § 299A

(1965) (professionals are "required to exercise the skill and knowledge normally possessed by

members of that profession or trade in good standing in similar communities"). Accordingly, the

Court grants defendant's Motion for Summary Judgment as to plaintiff's claim of negligence.

### 5)        Plaintiff's Claim of Fraud – Count V of the Complaint

Finally, defendant argues that plaintiff has failed to present sufficient evidence to raise a

genuine dispute of material fact as to its claim of fraud. This argument is unavailing.

In order to establish a claim of fraud under Pennsylvania law, a plaintiff must show:

"(1) a misrepresentation; (2) material to the transaction; (3) made falsely; (4) with the intent of

misleading another to rely on it; (5) justifiable reliance resulted; and (6) injury was proximately

caused by reliance." Barbieri v. Wells Fargo & Co., No. 09-3196, 2014 WL 7330461, at *11

(E.D. Pa. Dec. 22, 2014). Viewing the evidence in the light most favorable to plaintiff, the Court

concludes that plaintiff has presented sufficient evidence from which a reasonable juror could

conclude that these elements are met.

As discussed above, plaintiff has presented evidence that, although defendant was aware

it could not complete the audit as early as November 6, 2009, it failed to communicate this

information to plaintiff and instead continued to bill plaintiff for services it knew it could not

perform. On this issue, there is also evidence of numerous blank auditing forms and checklists

that defendant allegedly never filled out. (See Pl.'s Mot. Partial Summ. J.., Exs. H-1–H-4, I-1–I-

4.) Defendant has presented contrary evidence which tends to refute plaintiff's version of events,

(see, e.g., id., Deposition of Gregory Lavin, Ex. J, at 129) (stating that defendant did in fact

13

communicate to plaintiff regarding its concerns about plaintiff's internal controls), but this evidence further underscores the existence of a genuine dispute of material fact as to this issue.

Accordingly, the Court denies defendant's Motion for Summary Judgment with respect to plaintiff's claim of fraud.

### IV.    DEFENDANT'S MOTION TO PRECLUDE THE EXPERT REPORT AND TESTIMONY OF THOMAS P. KIRWIN

The Court next considers Defendant's Motion to Preclude the Expert Report and Testimony of Thomas P. Kirwin. Plaintiff retained Kirwin to provide opinions, from an auditor's perspective, regarding the custom and practice of the Certified Public Accountant ("CPA") profession in conducting an audit pursuant to standards set forth by the AICPA and the PCAOB. Kirwin drafted an expert report in which he concluded, inter alia, that defendant did not comply with PCAOB auditing standards; the audit was not consistent with industry practice regarding procedures and documentation; defendant breached its obligations to plaintiff; defendant did not comply with the Code of Professional Ethics; and defendant was negligent in its responsibilities.

In its Motion, defendant argues that Kirwin's testimony should be precluded because he is not qualified, his opinions are unreliable, his opinions do not "fit" the facts of the case, and he offers improper legal conclusions. After setting forth the appropriate legal standard, the Court considers each of defendant's arguments in turn.

#### A.  Legal Standard

Federal Rule of Evidence 702 provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The "pathmarking" Supreme Court cases interpreting Rule 702 are <u>Daubert v.</u>
<u>Merrell Dow Pharm.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S.
137 (1999). <u>United States v. Mitchell</u>, 365 F.3d 215, 234 (3d Cir. 2004). In <u>Daubert</u>, the
Supreme Court held that "[f]aced with a proffer of expert scientific testimony . . . the trial
judge must determine at the outset . . . whether the expert is proposing to testify to
(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a
fact in issue." <u>Daubert</u>, 509 U.S. at 592. In <u>Kumho Tire</u>, the Supreme Court made clear
that the <u>Daubert</u> gatekeeping function extends beyond scientific testimony to testimony
based on "technical" and "other specialized" knowledge. 526 U.S. at 141.

Under <u>Daubert</u>, courts must address a "trilogy of restrictions" before permitting
the admission of expert testimony: qualification, reliability and fit. <u>Schneider v. Fried</u>,
320 F.3d 396, 404 (3d Cir. 2003); <u>see also</u> <u>Elcock v. Kmart Corp.</u>, 233 F.3d 734, 741 (3d
Cir. 2000). The party offering the expert must prove each of these requirements by a
preponderance of the evidence.  <u>In re TMI Litig.</u>, 193 F.3d 613, 663 (3d Cir. 1999).

### B.  Kirwin's Qualifications

First, defendant argues that Kirwin is not qualified to offer his opinions under Rule 702
because, although he has general accounting experience, he does not have any audit or attest
experience for SEC registrants or with any PCAOB audit clients and did not possess an active
CPA license at the time he rendered his opinions. The Court rejects these arguments.

To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge'
regarding the area of testimony."  <u>Betterbox Commc'ns Ltd. v. BB Techs., Inc.</u>, 300 F.3d 325,
335 (3d Cir. 2002) (quoting <u>Waldorf v. Shuta</u>, 142 F.3d 601, 625 (3d Cir. 1998)). The Third
Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist

on a certain kind of degree or background when evaluating the qualifications of an expert. See Waldorf, 142 F.3d at 625. "The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 855 (3d Cir. 1990) (quoting Fed. R. Evid. 702) ("Paoli I"). Moreover, "[t]his liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Id. (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)).

Kirwin obtained a Bachelor's Degree in Accounting from LaSalle University in 1975. (Pl.'s Resp. Opp'n Def.'s Mot. Preclude Report and Test. of Thomas P. Kirwin, 7.) Since then, he has amassed more than twenty-five years of professional experience in the accounting field. (Id. 7–8.) In addition to having previously served as a court-appointed auditor, Kirwin has worked in various capacities in both the public and private sectors that have provided him with extensive auditing experience. (Id.) Moreover, although Kirwin's CPA license was inactive due to personal issues at the time he provided his opinions, his license has since been reinstated. (Id. 7.)

In short, upon review of the record, the Court concludes that Kirwin possesses the requisite "specialized knowledge regarding the area of [his proposed] testimony" such that he is qualified under Rule 702. Betterbox Commc'ns Ltd, 300 F.3d at 335.

### C.  Reliability of Kirwin's Opinions

Second, defendant argues that Kirwin's opinions are unreliable under Rule 702 because they are not based on any acceptable methodology and because Kirwin misinterpreted various PCAOB and other related accounting standards.[4] These arguments are unavailing.

In <u>Kumho Tire</u>, the Supreme Court held that the <u>Daubert</u> test of reliability is "flexible" and that "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141-42 (emphasis omitted). The reliability requirement of <u>Daubert</u> "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 742 (3d Cir. 1994) ("<u>Paoli II</u>") (quoting <u>Daubert</u>, 509 U.S. at 590). Parties "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." <u>Paoli II</u>, 35 F.3d at 744 (emphasis omitted). "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or

---

[4]     Defendant also argues that Kirwin's opinions should be excluded because he does not state anywhere in his expert report that his opinions are held to a reasonable degree of accounting certainty. The Court rejects this argument. Under Pennsylvania law, experts are not required to use "magic words" when rendering their opinions. <u>Welsh v. Bulger</u>, 698 A.2d 581, 585-86 (Pa. 1997). Although Kirwin's report — which will not itself be admitted into evidence — does not use the words "reasonable degree of accounting certainty," there is enough in the report to lead the Court to conclude that his opinions are set forth with the requisite degree of certainty. Kirwin will be required to so state at trial and, if he cannot do so with respect to any of his opinions, those opinions will be ruled inadmissible.

satisfactorily weigh its inadequacies." Mitchell, 365 F.3d at 244 (quoting Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

With respect to methodology, contrary to defendant's assertion, Kirwin did apply a particular methodology in rendering his opinions, as opposed to relying merely on his "own intuition." Oddi v. Ford Motor Co., 234 F.3d 136, 158 (3d Cir. 2000). He based his opinions on his review of the relevant parts of the record, his professional background and experience, and his review of numerous professional accounting standards. Thus, the Court concludes that Kirwin's opinions rest upon "good grounds," Mitchell, 365 F.3d at 244, and that plaintiff has "come forward with proof of a valid methodology based on more than just the ipse dixit of the expert." Pappas v. Sony Elecs., Inc., 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000).

With respect to defendant's argument that Kirwin's opinions should be excluded because he misinterpreted various professional accounting standards, this argument amounts to nothing more than a disagreement with the conclusions that Kirwin reached. The fact that defendant has put forward a competing expert who interprets the same standards differently does not render Kirwin's opinions unreliable. Defendant may challenge the basis for Kirwin's opinions on cross-examination, and the trier of fact can then decide whether to credit his testimony. See, e.g., Mitchell, 365 F.3d at 244 ("As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.").

Thus, the Court concludes that Kirwin's proffered opinions are reliable under Rule 702.

### D.  Fit of Kirwin's Opinions to the Case

Third, defendant argues that Kirwin's opinions concerning defendant's alleged violations of professional accounting standards should be excluded because his opinions would confuse the trier of fact and improperly prejudice the defense. According to defendant, this is due to the fact that Kirwin "does not attempt to make any causal connection between the violations of professional standards he asserts and the damages Plaintiff alleges." (Def.'s Mot. Preclude Report and Test. of Thomas P. Kirwin 16.) The Court construes this as an argument that Kirwin's opinions do not fit the facts of the case.

For expert testimony to meet the Daubert "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 (citations and internal quotation marks omitted).

Contrary to defendant's argument, Kirwin's opinions do fit the facts of this case. Defendant explicitly agreed to conduct the audit pursuant to PCAOB accounting standards. (See, e.g., Pl.'s Mot. Partial Summ. J., December 10, 2008 Engagement Letter, Ex. A-1, at 1) ("[O]ur audits of the financial statements will be conducted in accordance with the standards established by the Public Company Accounting Oversight Board (PCAOB) . . . ."). Kirwin's opinions concern his interpretation of those standards and his evaluation of defendant's compliance with those standards during the course of the audit. Thus, his opinions will assist the trier of fact in deciding whether defendant violated those standards, which will thereby assist the trier of fact in determining whether defendant breached the standard of care it owed to plaintiff. See, e.g., Rotshteyn v. Agnati, S.P.A., 149 F. App'x 63, 66 (3d Cir. 2005) (non-precedential) ("[Although]

[w]e have found no Pennsylvania case stating that trade association standards can impose legal duties the breach of which would be evidence of negligence . . . [t]he situation is different where a statute or contract that imposes a legal duty incorporates a trade association standard."); Knopick v. Downey, No. 09-1287, 2013 WL 1882983, at *14 (M.D. Pa. May 6, 2013) ("Although testimony regarding duty and breach of care requires the application of facts to law, a plaintiff may supply expert testimony on the issue to establish a breach of the duty of care owed. . . ."). Moreover, as discussed above, if such a breach is established at trial, there is sufficient evidence to link that breach to the damages allegedly sustained by plaintiff.

Thus, the Court concludes that Kirwin's opinions satisfy the fit requirement under Daubert and Rule 702.

### E. Improper Legal Conclusions

Finally, defendant argues that two of Kirwin's opinions — that defendant "is in breach of the Audit Engagement Letter" and that defendant "was negligent in [its] responsibilities to [plaintiff]" — should be excluded as improper legal conclusions. The Court agrees.

"Because the jury does not decide questions of law, legally conclusive statements are not helpful to the jury, and thus, inadmissible at trial or at summary judgment." Knopick, 2013 WL 1882983, at *14. Allowing Kirwin to opine that defendant breached the terms of the agreement or that defendant was negligent in conducting the audit would improperly substitute Kirwin's judgment for that of the trier of fact. See, e.g., Petrulio v. Teleflex Inc., No. 12-7187, 2014 WL 5697309, at *15 (E.D. Pa. Nov. 5, 2014) (excluding proposed testimony that plaintiff in an employment discrimination case did not conduct a "reasonable and diligent" job search following her termination). Accordingly, the Court grants that part of defendant's Motion which seeks to preclude Kirwin from offering such opinions at trial.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is denied, Defendant's Motion for Summary Judgment on Plaintiff's Claims is granted in part and denied in part, and Defendant's Motion to Preclude the Report and Expert Testimony of Thomas P. Kirwin is granted in part and denied in part.

An appropriate order follows.